Davis v. Helm.

Thomas Davis, Respondent, v. John R. Helm,
Appellant.

St. Louis Court of Appeals, February 19, 1889.

Promissory Note: NON-NEGOTIABLE.  A promissory note which is
not by its terms made payable to the order of the payee, nor to
bearer, is not a negotiable note, within the statutory definition.

Davis v. Helm.

*Appeal from the Hannibal Court of Common Pleas.*
HON. THOMAS H. BACON, Judge.

REVERSED AND REMANDED.

*George M. Harrison*, for the appellant.

The note, as set out in the defendant's offset, was, as shown by the testimony of the defendant and John B. Lewis, duly assigned and endorsed by plaintiff over to the defendant for value, and it was also proven by the defendant, as well as admitted by the plaintiff, that the maker of the said note was a non-resident of the state of Missouri, and that, as the note was not payable to the "order" of any one, it was not a negotiable piece of paper, and that the rules applicable to negotiable paper did not apply to it, but it was a non-negotiable note, and was clearly within the provisions of section 665 of the Revised Statutes of Missouri. R. S. 1879, sec. 665, p. 107.

THOMPSON, J., delivered the opinion of the court.

This was an action commenced before a justice of the peace to recover a balance due by account for rents collected by the defendant, for the plaintiff. The defendant filed before the justice an offset, consisting of a promissory note of the following tenor :

"$100.— HANNIBAL, MO., April 13, 1885.

" Ten months after date I promise to pay Thomas Davis one hundred dollars at eight per cent. interest for value received.

"WILLIAM J. EAST."

The note was endorsed in blank, "THOMAS DAVIS."

At the trial in the circuit court the defendant admitted that he owed to the plaintiff the balance due by account for which the plaintiff sued. The whole

controversy therefore turned upon the matter of set-off. It appeared that the plaintiff and defendant, on the twenty-seventh of October, 1886, which, it will be perceived, was after the note had by its terms become due, entered into a trade by which they exchanged certain lands, the plaintiff turning over the note to the defendant in the trade. At the time when the defendant turned the note over, he wrote his name on the back of it, being advised by the person who acted as the conveyancer that it was necessary to do so. It appeared by the uncontradicted evidence that the maker of the note was not then, or since, or at the time of the bringing of the action, a resident of the state of Missouri, but that at all such times he was a resident of the state of Illinois. There was also evidence tending to show that he was insolvent.

This statement is sufficient to indicate the theory upon which the court put the case to the jury. The record does not show that any instructions were requested by either party ; but the court of its own motion gave the following instructions :

"1. The court, of its own motion, instructs the jury that, under the decisions of the courts of last resort, the note read in evidence, although overdue when endorsed, did not then, or at any time, belong to the class of instruments described in the statute of contracts as "non-negotiable." To this instruction the court added the following citation of authorities : "*Light v. Kingsbury*, 50 Mo. 331 ; *Rodney v. Wilson*, 67 Mo. 125 ; *Beeler v. Frost*, 70 Mo. 185 ; *Morgner v. Bigelow*, 3 Mo. App. 592."

"2. The court, of its own motion, instructs the jury that, it appearing from the ( un )-contradicted evidence that the maker of the note was a resident of the state of Illinois, and a non-resident of the state of Missouri, at the time the note was endorsed and transferred by the plaintiff to the defendant, and that said

endorsement and delivery by plaintiff to defendant was made at the city of Hannibal in the state of Missouri, the endorsement and delivery constituted the drawing of a foreign bill of exchange on an acceptance by the said maker of said note, upon which protest was necessary as well as demand of payment and notice of dishonor; and it further appearing from the uncontradicted evidence that no protest was made at all, and that no notice of dishonor was given in a reasonable time, the said plaintiff, as endorsee-drawer, is discharged from any liability on said note."

"3. The court instructs the jury that, upon the evidence, they will find for the plaintiff in the amount of $52.25, being the admitted amount of collections by defendant."

It thus appears that the court was of opinion that the note sued on was a non-negotiable instrument within the meaning of the following section of the Revised Statutes: "The assignee of a bond, non-negotiable note or account, may maintain an action against the assignor, upon failure to obtain payment from the obligor, maker or debtor, only in one of the following cases: First, if he use due diligence in the institution and prosecution of a suit against the obligor, maker or debtor, for the recovery of the money or property due, or damages in lieu thereof; second, if the obligor, maker or debtor, is insolvent, or is not a resident of the state, so that a suit would be unavailing or could not be instituted." R. S., sec. 665.

It is further perceived that the trial court was also of opinion that this was a negotiable promissory note, and that the act of the plaintiff in endorsing it to the defendant after it was due was equivalent to drawing a new bill at sight upon the non-resident maker, which was tantamount to the drawing of a foreign sight bill of exchange, so that, in order to charge the endorser, it was necessary for the endorsee to make demand upon

the foreign maker of the note, and, in the event of non-payment, to protest the same. That the effect of endorsing a past due *negotiable* instrument is that stated by the court in its instructions, is the law in this state. ( *Light v. Kingsbury*, 50 Mo. 331, 333.) But this principle has no application to the transaction in question, because here the promissory note was not a negotiable instrument. Our statute, reciting what words shall make a promissory note negotiable as an inland bill of exchange is negotiable, is as follows: "Every promissory note, for the payment of money to the payee therein named, or order or bearer, and expressed to be for value received, shall be due and payable as therein expressed, and shall have the same effect and be negotiable in like manner as inland bills of exchange." The present note was not negotiable under this statute. It did not purport to be payable either to the order of the payee therein named or to the bearer. A negotiable note is one payable to order or bearer, and it will not be negotiable unless these words, or words of similar legal import, are found therein. *Yingling v. Kohlhass*, 18 Md. 148; *Reed v. Murphy*, 1 Ga. 236; *Gerard v. LaCoste*, 1 Dall. 194; *Smurr v. Borman*, 1 Oh. 272. The statute was intended to affirm this rule. Under the statute, a note will be negotiable if made payable to the order of a person named, or to a person named or order, or to a person named or bearer, provided it contain the other statutory requisites. But the words "order" or "bearer" are universally regarded as negotiable words, and unless they are contained in the instrument, or unless the instrument contains other equivalent words, it is not negotiable. A promise to pay money to A. B., simply, is not negotiable.

The instrument was therefore a "non-negotiable note," within the meaning of section 665, Revised Statutes, above quoted; and the undisputed fact that the maker was a non-resident excused the defendant

from the exercise of diligence in collecting the note from the maker, by the terms of the statute, and took the case out of the operation of a line of decisions based upon the statute, which holds that the assignee of a non-negotiable note can maintain no action against the assignor unless he first use due diligence to recover of the maker. Originally, the holder was obliged to sue the maker, although a non-resident, unless he could show that such suit would be unavailing, before he could have recourse against his assignor. *Myers v. Miller*, 3 Mo. 586. But the statute in its present form, excusing diligence in the case of non-resident makers, was enacted in 1885.

The case was thus submitted to the jury on an erroneous theory, and the judgment will accordingly be reversed and the cause remanded. It is so ordered. All the judges concur.